MASSACHUSETTS LOAN & TRUST CO., Appellee, v. H. C. MOULTON *et al.*, Appellants.

Chattel Mortgage : NOTES : PRIORITY OF LIEN. A chattel mortgage was given to secure the payment of three promissory notes falling due at different times. After the payment of the note first maturing, the note last maturing was transferred, before maturity, to the defendants. Thereafter there was an exchange of part of the mortgaged property between the mortgagor and mortgagee, whereby the second note was in part, if not wholly, paid. Subsequently, this second note was transferred, after maturity, to the plaintiff. *Held*, that the note last maturing should be first satisfied out of the property remaining subject to the mortgage.

*Appeal from Osceola District Court.*—HON. C. H. LEWIS, Judge.

THURSDAY, OCTOBER 16, 1890.

THIS is an action of replevin for the possession of a threshing machine, known as a Minnesota chief separator. A jury was waived, and the cause was tried to the court. There was a judgment entered for the plaintiff. The defendants appeal.

*D. D. McCallum* and *C. M. Brooks*, for appellants.

*O. J. Clarke*, for appellee.

ROTHROCK, C. J.—It appears from the record and the evidence in the case that on the thirtieth day of August, 1886, J. E. Miller and J. C. Lynn executed a chattel mortgage to E. D. Brown as receiver of the Northwestern Manufacturing & Car Company upon one Minnesota chief separator, and one Pitts horsepower, to secure the payment of three promissory notes of even date with the mortgage, and payable as follows : One note for one hundred and fifty dollars payable November 1, 1886 ; one note for one hundred and forty dollars payable November 1, 1887, and one for one hundred and

forty dollars payable November 1, 1888. The first note has been paid, and the second note, which became due November 1, 1887, was, at the commencement of this suit, owned by the plaintiff. The third and last note was owned by the defendants, it having been assigned and transferred to them about October 30, 1886.

After the mortgage was executed and delivered, another transaction took place between the mortgagors and the mortgagee, by which the horsepower included in the mortgage was taken in exchange, and as part payment, for a steam-engine purchased by the mortgagors from the mortgagee. The horsepower was taken in part payment of the sum of two hundred dollars. In that part of the mortgage providing for a foreclosure and application of the proceeds of a foreclosure sale, there is this provision: "Out of the proceeds of said sale to pay as far as possible, *first*, the expenses of taking, keeping, advertising and selling said property, and the statutory attorney's fees in such case made and provided; *second*, to apply the balance toward paying that part of said debt evidenced by the notes then owned by second party; *third*, to apply the balance towards the payment of that part of said debt, evidenced by the notes not then owned by said second party, and then rendering the overplus, if any, to said first party or * * * heirs or assigns." The exchange of the horsepower as part payment for the steam-engine was made in June, 1887. The plaintiff acquired its right to the mortgage and the second note on the second day of February, 1888.

It will be observed that the proceeds of the sale of the property after paying costs is to be applied to the payment of any note owned by the car company. It is conceded that the car company does not now own any of the notes. The plaintiff owns one, and the defendants own the other. The plaintiff insists that it should have the first lien upon the property, because its note became due before the note owned by defendant, upon the familiar principle that the proceeds of the sale of mortgaged property should be first applied to the payment of the

debt which first becomes due. We do not understand that defendants' counsel dispute this rule. But it is claimed that the transaction by which the horsepower was taken in part payment for the steam-engine operated as a payment, or rather an extinguishment, of the note now held by the plaintiff, as between the defendant and the plaintiff. It is to be observed that the defendants became the owners of the last note long before the same became due, and before the horsepower was exchanged for the steam-engine. They then had a lien upon all of the property. The plaintiff took an assignment of the second note and mortgage long after the note became due, and after the horsepower had been disposed of. The plaintiff will be presumed to have known that the lien they took was not a lien upon the horsepower. The mortgagee had no power to impair the security of the defendants by depriving them of their lien on the horsepower. If the mortgagee had held the second note, and was now seeking a foreclosure and the application of the proceeds of sale first to that note, the defendants could well insist that they should first account for the value of the horsepower. And we are unable to discover that the plaintiff, their assignee, is in any better position than the mortgagee would be if party plaintiff. There is no question of an innocent good-faith purchaser for value in the case. And the evidence shows that the horsepower was worth more than the amount of the second note.

We have determined this case without the aid of authority. It appears to us that common honesty and fair dealing demands that we should hold that the defendants are entitled to their security unimpaired, or that the value of that part wrongfully appropriated by the mortgagor should be regarded as an extinguishment of the second note.

The judgment of the district court will be REVERSED